UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHELDON ENNIS, a/k/a THOMAS JONES,            :

                Petitioner,            :            10 Civ. 4023 (PKC) (GWG)

      -against-            :            REPORT AND
                             RECOMMENDATION
ROBERT KIRKPATRICK, Superintendent,            :
Wende Correctional Facility,
                             :
                Respondent.
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Sheldon Ennis ("Ennis" or "Sheldon") brings this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Ennis was convicted by a jury of conspiracy in the second degree, N.Y. Penal Law § 105.15; two counts of assault in the first degree, N.Y. Penal Law § 120.10; one count of assault in the second degree, N.Y. Penal Law § 120.05; criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03; and criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02.  See Petition for a Writ of Habeas Corpus by a Person in State Custody, filed May 14, 2010 (Docket # 2) ("Pet.") ¶ 5.  Ennis is imprisoned pursuant to an aggregate sentence of 43-1/3 years.  Id. ¶¶ 3, 5.  Ennis argues that his petition should be granted on two grounds: (1) ineffective assistance of counsel due to his trial counsel's failure to timely raise a motion for a mistrial and severance based on his discovery of Brady material; and (2) the prosecution's failure to disclose that Brady material.  For the reasons stated below, the petition should be denied.

I.      BACKGROUND

     A.      Facts

Evidence presented at trial showed that Sheldon Ennis and the other defendants were part of an extensive cocaine-selling organization known as the "Dog Pound" that operated out of the Evans Hotel, located on 38th Street near Eighth Avenue in Manhattan.  See People v. Ennis, 11 N.Y.3d 403, 406 (2008).  Evidence was also presented about three violent incidents in 1996 and 1998 committed by some or all of the defendants: one in which Billy Moody, a rival drug dealer, was shot; another in which the two leaders of a rival drug organization called the "Orange Bags" were stabbed, one of whom was seriously wounded; and a third in which a manager of another rival drug gang was shot.  Id. at 406-07; Brief for Defendant-Appellant, dated May 5, 2008 (annexed as Ex. B-2 to Exhibits in Support of Petition for Writ of Habeas Corpus, filed May 17, 2010 (docketed with Pet.) ("Exs. in Support")) at 9-12, 20-22; Brief for Respondent (annexed as Ex. B-3 to Exs. in Support) at 11-26.  Because the claims in this case relate only to evidence regarding the shooting of Moody, we discuss only those facts here.

Moody, a convicted drug dealer, was shot and seriously injured on August 27, 1996, while riding in a car driven by Frank 'Nitti' Brown, a fellow drug dealer.  See People v. Ennis, 41 A.D.3d 271, 273 (1st Dep't 2007); Brown: Tr. 1313, 1360-61, 1442-43, 1454-55; Moody: Tr. 910, 921-27, 935.[1]  Brown, who had an lengthy criminal history, was part of a drug organization that operated from 38th Street between Seventh and Eighth Avenues to 39th Street in Manhattan. (Brown: Tr. 1304, 1310-11, 1335, 1338).

On the day of the shooting, Brown drove to midtown Manhattan, near where he had

---

[1] "Tr." refers to pages of the trial transcript, which is divided into six volumes, filed as docket numbers 10, 11, 12, 13, 14, and 15.

recently organized a group of fifteen men, most of whom were armed, to resolve a drug-related dispute.  (Brown: Tr. 1358-59, 1362, 1365, 1367, 1371).  As he arrived at the area near the Evans Hotel, "the crowd scattered."  (Brown: Tr. 1372, 1452-53).  He continued down 38th Street where he and his passengers, including Moody, heard gun shots.  (Brown: Tr. 1371-72).  Brown turned onto Seventh Avenue and then west onto 37th Street.  (Brown: Tr. 1374).  When the car was about halfway down the block, Brown saw Sheldon leaning against a telephone pole on the south side of 37th Street.  (Brown: Tr. 1374-75).  Sheldon pointed a gun at Moody's car and fired more than one shot.  (Brown: Tr. 1375-76).  Brown swerved the car towards Sheldon and Sheldon ran past the car towards Seventh Avenue.  (Brown: Tr. 1376-77, 1386-87, 1397).  Brown straightened the car and saw Aaron Ennis, Sheldon's co-defendant, on the other side of the street firing shots at the car.  (Brown: Tr. 1377-79, 1464, 1468, 1547).  As Brown approached 37th Street and Eighth Avenue, he saw Keith Taylor, another co-defendant, with a gun pointing at the car.  (Brown: Tr. 1379-80, 1548).  Brown heard shots and a bullet entered the rear of the vehicle, striking Moody.  (Brown: Tr. 1380-82).  Moody and Kimily Hyndman, another passenger, did not see who shot at the car.  (Moody: Tr. 921-22; Hyndman: Tr. 1662-63).  Brown had been promised by the District Attorney's office that a letter would be sent to the parole board indicating that he had testified at the trial.  (Brown: Tr. 1315).

Before trial, defense counsel requested "all evidence and information of every form and nature in the possession, custody or control of the District Attorney or which, by the exercise of due diligence, should be known to the District Attorney which may tend to exculpate the defendant either by an indication of [his] innocence or by potential impeachment of a witness to be called by the District Attorney within the meaning of Brady v. Maryland . . . ."  Demand to Produce (annexed as Ex. D-2 at Ex. B to Exs. in Support) ¶ 18.  The prosecution responded that

3

"the People kn[e]w of no evidence exculpatory to the defendant," and acknowledged their "continuing obligation under Brady v. Maryland."  Affirmation in Response to Defendant's Omnibus Motion (annexed as Ex. D-2 at Ex. B to Exs. in Support) ¶ 18.

Before trial, Aaron Ennis stated during a proffer session with the prosecution that he had shot Moody and that Sheldon was not present at the shooting.  See Affirmation of David Cooper, dated Apr. 15, 2004 (annexed as Ex. D-2 at Ex. D to Exs. in Support) ("Cooper Aff.") ¶ 5.  The prosecution did not disclose this information either to Patrick Joyce, Sheldon's original defense counsel, or to David Cooper, Sheldon's later defense counsel.  See id. ¶¶ 4-5; Affirmation of Patrick Joyce, dated Aug. 19, 2004 (annexed as Ex. D-2 at Ex. E to Exs. in Support) ("Joyce Aff.") ¶ 7.  Joyce affirmed that "[h]ad [he] been informed by the prosecution of this information, [he] promptly would have sought a separate trial for Sheldon Ennis.  At that trial, [he] would have called Aaron Ennis to testify that Sheldon Ennis was not present for and did not participate in the shooting of William Moody."  Joyce Aff. ¶ 8.  Cooper affirmed that when he was assigned to the case, "[n]othing in the file indicated that the prosecution ever disclosed any Brady material relating to statements made by Aaron Ennis to the prosecution inculpating himself in the shooting of William Moody and exculpating Sheldon Ennis in that shooting."  Cooper Aff. ¶ 4.

Cooper recounted that, at some point "[l]ate in the trial," Edward Wilford, Aaron Ennis's counsel, revealed to Cooper that Aaron had attempted to cooperate with the prosecution and had informed the prosecution that he had shot Moody and that Sheldon was not present.  Id. ¶ 5.  Wilford told Cooper about the confession in confidence, however, and on the condition that Cooper would not reveal the evidence to anyone, including Sheldon, until the completion of the trial.  Id. ¶ 6.  Cooper did not disclose the conversation until the trial had concluded.  Id. ¶¶ 7, 8, 10.

4

A jury convicted Ennis of six out of the nine counts charged against him in the indictment, Ennis, 11 N.Y.3d at 408 n.1, including one count of assault in the first degree, N.Y. Penal Law § 120.10, for the shooting of Billy Moody. See Pet. ¶ 5; Indictment (annexed as Ex. F to Exs. in Support) at 14; Ennis, 11 N.Y.3d at 407-08.

      B.    Procedural History

          1.    Motion to Set Aside the Verdict

Before sentencing, Sheldon's counsel filed a motion to set aside the verdict on the basis of the Brady violation. See Letter from David Cooper to the Honorable Leslie Crocker Snyder, dated Sept. 8, 2000 (annexed as Ex. E-2 to Exs. in Support) at 2-3. The prosecution argued that the motion was procedurally defective because it did not contain sworn allegations of fact and that there was no Brady violation because the defense learned of Aaron Ennis's statements during trial and did not take any action based on them. See Affirmation in Response to Defendant's Motion to Set Aside the Verdict, dated Dec. 6, 2000 (annexed as Ex. E-3 to Exs. in Support) at 3-9. Sheldon argued in response that he was entitled to a new trial because the prosecution's duty pursuant to Brady was "ongoing" and did "not cease with the conclusion of the trial nor need it be triggered by any sworn allegations made by the defendant or his attorney." Letter from David Cooper to the Honorable Leslie Crocker Snyder, dated Dec. 19, 2000 (annexed as Ex. E-4 to Exs. in Support) at 1. Sheldon further argued that "the statement of Aaron Ennis, given that it was against his penal interest to take exclusive responsibility for a crime and given that the proof against him was far from perfect, could reasonably have led the jury to conclude that [he] was not guilty of this offense." Id. at 2.

On March 1, 2001, the trial court acknowledged that the prosecution "should have turned this information over," but found the error not to be "critical" and thus denied defense counsel's

5

motion.  Ind. No. 7870/98, dated Mar. 1, 2001 (annexed as Ex. E-1 to Exs. in Support) at 2.  The court expressed its concern that "defense counsel [was] us[ing] the Brady doctrine as both a shield and a sword," explaining that "counsel had the information at a time when he could have used it," and "tactically chose not to do anything with this information until after the jury reached its verdict."  Id.

      2.      Section 440.10 Motion

In January 2005, Ennis filed a motion pursuant to New York Criminal Procedure Law sections 440.10(1) and 440.20, again raising the Brady issue as well as alleging ineffective assistance of counsel based upon his defense counsel's failure to act on the information he received from Wilford until after the verdict was rendered.  See Notice of Motion (annexed as Ex. D-2 to Exs. in Support) at 1-2; Affirmation of Jessica S. Henry (annexed as Ex. D-2 to Exs. in Support) ¶¶ 14-34, 58-60.  This motion was supported by an affidavit from Ennis's trial counsel, Cooper, "who explained that it was Aaron's attorney who told him that, in an attempt to enter into a cooperation agreement with the People, Aaron stated that he shot Billy Moody and that defendant was not involved in the shooting."  Ennis, 11 N.Y.3d at 409.  Cooper went on to state that "he had promised Aaron's attorney that he would not disclose this information until the trial was over . . . [and] that he had no 'tactical or strategic reason' for his failure to act on the information during the trial."  Id.; see Cooper. Aff. ¶¶ 7, 10.

On October 7, 2005, the Honorable Robert M. Stolz denied this motion.  See Order, in Indictment No. 7870/98 (annexed as Ex. D-1 to Exs. in Support).

      3.      Appeals

Ennis appealed his conviction to the Appellate Division, First Department, raising claims of ineffective assistance of counsel and violation of Brady, among other claims.  In its decision,

6

the court recognized that "the People should have disclosed to Sheldon that Aaron had made a statement exculpating Sheldon as to the shooting in question," but held that there was no assurance that, even if the information had been disclosed and Sheldon had been granted a severance, that Aaron would have waived his Fifth Amendment right and testified for Sheldon, or that the statement would have been admissible as a "declaration against penal interest." Ennis, 41 A.D.3d at 273.  Similarly, the court rejected Ennis's ineffective assistance of counsel claim, stating that while it did "not condone the fact that Sheldon's lawyer apparently placed his promise of confidentiality to Aaron's lawyer above his duty of loyalty to his own client," it was unlikely that a severance would have in fact been granted or that Aaron would have testified for Sheldon.  Id. at 273-74.

The Court of Appeals granted leave to appeal but affirmed the conviction.  The court first rejected Ennis's argument that a conflict of interest was created when his trial counsel made a promise to Aaron's counsel not to reveal the information at issue, and that this conflict significantly impacted Ennis's defense.  11 N.Y.3d at 409-10.

The court next considered Ennis's argument that he received ineffective assistance of counsel because his attorney failed to act appropriately on the information he received from Aaron's lawyer.  Id. at 412.  The court held that Ennis's "defense counsel performed as an effective advocate in many significant respects."  It found that his counsel did not perform ineffectively by not seeking a severance so that Aaron's statement could be admitted.  The Court stated:

> [Sheldon's] claim that his trial should have been severed from Aaron's so that he could call Aaron as a witness [wa]s undermined by the fact that Aaron would undoubtedly have asserted his Fifth Amendment privilege against self-incrimination if this had occurred.  Nor could [Sheldon] have called a witness who overheard Aaron's statement – such as Aaron's attorney – to testify as to its

content because, in a trial against defendant, the statement would [have been] hearsay not subject to any exception.

Ennis, 11 N.Y.3d at 412.

Finally, with respect to the Brady claim, the court recognized that the failure of the People to disclose the exculpatory information "cannot be condoned," id. at 414, but held that "the purported Brady violation [wa]s not properly before th[e] Court for review due to defense counsel's failure to preserve the issue by making a timely objection to the People's nondisclosure when he discovered it during the trial," id. at 414 n.2 (citing People v. Rogelio, 79 N.Y.2d 843 (1992)). It did not reach the merits of the Brady claim.

Ennis's petition for writ of certiorari to the United States Supreme Court was denied on May 18, 2009. See Ennis v. New York, 129 S. Ct. 2383, 2384 (2009).

4.        The Instant Petition

Ennis filed this petition for a writ of habeas corpus on May 14, 2010. See Pet.; Exs. in Support; Memorandum in Support of Petition for Writ of Habeas Corpus, filed May 14, 2010 (Docket # 3) ("Pet. Mem."). Ennis seeks relief on the grounds that he was denied effective assistance of trial counsel and that the prosecution's failure to disclose exculpatory evidence violated Ennis's due process rights. See Pet. ¶¶ 41-49.

Respondent filed papers in opposition to the petition, see Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, filed Sept. 15, 2010 (Docket # 16) ("Resp. Mem."); Answer and Appendix Opposing Petition for a Writ of Habeas Corpus, filed Sept. 15, 2010 (Docket # 17), and Ennis filed a reply brief, see Reply Memorandum in Support of Petition for Writ of Habeas Corpus, filed Oct. 15, 2010 (Docket # 18) ("Pet. Reply").

II.      STANDARD FOR PETITIONS BROUGHT PURSUANT TO 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it

must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the

substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

its decision to indicate that the claims were decided on anything but substantive grounds," a state

court decision will be considered to be "adjudicated on the merits" even if it fails to mention the

federal claim and cites no relevant federal case law.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir.

2001); accord Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d)

deference applies even "[w]here a state court's decision is unaccompanied by an explanation").

Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that

presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state

court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or

9

"if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable" – a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("even a strong case for relief does not mean the state court's contrary conclusion was unreasonable"). In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant

10

'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Id. at 106-07 (citation omitted). Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citations omitted).

III.     DISCUSSION

A.     Ineffective Assistance of Counsel

Ennis argues that his defense counsel's failure to raise a motion for a mistrial and severance based upon discovery of Brady material that the People had failed to disclose constitutes ineffective assistance of counsel. See Pet. Mem. at 20-32; Pet. Reply 3-12. Respondent argues that petitioner received effective assistance of counsel, that in any event there was no prejudice that resulted from counsel's actions, and that Ennis has not demonstrated that the state court's determination of the matter constituted an unreasonable application of federal law. See Resp. Mem. at 36-51.

11

      1.      <u>Law Governing Ineffective Assistance of Counsel on Federal Habeas Review</u>

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-96 (1984).  The <u>Strickland</u> test has been characterized as "rigorous" and "highly demanding."  <u>Pavel v. Hollins</u>, 261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted); <u>accord</u> <u>Bell v. Miller</u>, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing][a] needle").  To meet the <u>Strickland</u> standard, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) that "any deficiencies in counsel's performance" were "prejudicial to the defense," <u>id.</u> at 692.  <u>Accord</u> <u>Rosario v. Ercole</u>, 601 F.3d 118, 123 (2d Cir. 2010), <u>petition for cert. filed</u>, Dec. 29, 2010 (No. 10-854).

In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "judicial scrutiny . . . must be highly deferential" and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002) (quoting <u>Strickland</u>, 466 U.S. at 689) (internal quotation marks, bracketing, and citation omitted).  "[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."  <u>United States v. Nersesian</u>, 824 F.2d 1294, 1322 (2d Cir.) (citing <u>United States v. Afflerbach</u>, 754 F.2d 866, 870 (10th Cir.), <u>cert. denied</u>, 472 U.S. 1029 (1985)), <u>cert. denied</u>, 484 U.S. 958 (1987).

To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).

The Second Circuit has summarized the application of the Strickland test on habeas review as follows:

> When a federal court reviews a state court decision under § 2254, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, --- U.S. ----, 129 S. Ct. 1411, 1420 (2009) (internal quotation marks omitted).  The Strickland standard itself is a "general standard," meaning its application to a specific case requires "a substantial element of judgment" on the part of the state court.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Knowles, 129 S. Ct. at 1420.  Thus, state courts are granted "even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 129 S. Ct. at 1420.  In order to prevail, a petitioner must overcome that substantial deference and establish that the state court's decision on ineffective assistance was contrary to, or an unreasonable application of, Strickland.

Rosario, 601 F.3d at 123.

2.   Analysis

We turn to the prejudice prong of Strickland because it is sufficient to dispose of this case.  See, e.g., Strickland, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").  Petitioner argues that "[h]ad counsel timely acted on the Brady violation, it is more than probable that the outcome would have been different."  Pet. Mem. at 22; see id. 23-24; Pet. Reply 9-12.  But there is little foundation to support this assertion.  As the Court of Appeals held:

> Defendant's claim that his trial should have been severed from Aaron's so that he could call Aaron as a witness is undermined by the fact that Aaron would undoubtedly have asserted his Fifth Amendment privilege against

> self-incrimination if this had occurred.  Nor could defendant have called a witness
> who overheard Aaron's statement . . . to testify as to its content because, in a trial
> against defendant, the statement would be hearsay not subject to any exception.

Ennis, 11 N.Y.3d at 412.  Both these points – the extreme unlikelihood that Aaron would have

not invoked his Fifth Amendment privilege and Sheldon's inability to get Aaron's statement into

evidence – mean that there was no reasonable probability that the outcome of the case would

have been different regardless of counsel's efforts to make use of the Brady disclosure.

As to the first point, petitioner correctly notes that "whether or not Aaron would have

ultimately testified [at a severed trial of Sheldon] could only be a matter of conjecture."  Pet.

Reply at 10-11.  And it is doubtful that "conjecture" could result in a "reasonable probability"

that had counsel taken some action in response to the disclosure, the outcome of the trial would

have been different.  On the facts of this case, Sheldon makes no convincing argument that there

was any possibility at all that Aaron would have actually testified to his own involvement in the

shooting – a fact that he necessarily would have had to admit were he to testify about what

occurred that day.  Such testimony would have doomed any chance he had of prevailing at his

own trial.  The fact that Aaron made the statement about Sheldon in a proffer session provides

little evidence that he would have made the statement at trial because at the proffer session,

unlike at a trial, "Aaron was in control of whether any statement he made could be used against

him."  Ennis, 11 N.Y.3d at 413.  Of course, no affidavit is provided from Aaron as to his

willingness to testify and without invoking his Fifth Amendment privilege against self-

incrimination.  The reason there is no such affidavit is undoubtedly because Aaron would have

invoked that privilege had he actually been called as a witness at Sheldon's trial and that he

would invoke the privilege even today.  Notably, Aaron is still seeking a new trial in his case.

See Ennis v. Artus, 09 Civ. 10157 (DAB) (GWG) (petition for writ of habeas corpus filed Dec.

14, 2009).

Sheldon argues that, even if Aaron had asserted the privilege, Sheldon's trial counsel "had other options at his disposal relating to the introduction of those statements." Pet. Mem. at 24. But the only option that could have had any possible effect on the outcome would have been the admission of Aaron's statement as a declaration against penal interest ("DAPI"). See Pet. Mem. at 24; Pet. Reply at 11-12. The Court of Appeals discussed this issue in detail, however, explaining as follows:

> Defendant's allegation that the statement would be admissible through a third party under the exception for declarations against penal interest (DAPI) also fails. To qualify under this exception, the declarant must be unavailable, must have competent knowledge of the facts and must have known at the time the statement was made that it was against his or her penal interests (People v Brensic, 70 N.Y.2d 9, 15 (1987); see People v Settles, 46 N.Y.2d 154, 167 (1978)). Even if these criteria are met, the statement cannot be received in evidence unless it is also supported by independent proof indicating that it is trustworthy and reliable (id.). Here, only two of the DAPI criteria are present: Aaron would have been unavailable to testify on defendant's behalf because of his Fifth Amendment privilege and, since Aaron acknowledged (and independent evidence indicated) that he participated in the shooting, he would have had competent knowledge of whether defendant was also a participant.

> The requirement that the statement be contrary to the declarant's penal interest, however, poses a problem since the part of the statement that defendant would have sought to admit – that defendant was not present at the time of the shooting – is not directly inculpatory of Aaron (Brensic, 70 N.Y.2d at 16 (courts "admit only the portion of (the) statement which is opposed to the declarant's interest since the guarantee of reliability contained in declarations against penal interest exists only to the extent the statement is disserving to the declarant" (citations omitted))). Moreover, given the context in which the statements were elicited, it is questionable whether Aaron would have viewed them as being against his penal interest. Aaron made the statements at the District Attorney's office, in the presence of his attorney, at a time when he was already being prosecuted for the offense and as part of a proffer in which he apparently sought to obtain an advantage, perhaps a plea bargain for himself or leniency for Sheldon, in exchange for his cooperation. As such, Aaron was in control of whether any statement he made could be used against him and, if it was, it would only be because he had reached an agreement with the prosecution that he deemed sufficiently valuable to justify such a result. Finally, an inculpatory

declaration is not admissible under the fourth criterion unless there is "sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability" (id. at 15 (citation omitted)) and, in this case, no such proof has been identified.

Ennis, 11 N.Y.3d at 412-13.

While petitioner asserts that the New York Court of Appeals is "wrong" as to the admissibility of Aaron's statement, Pet. Mem. at 25 n.8, the New York Court of Appeals is the court with the greatest competence in deciding this issue of state evidentiary law and thus we cannot say that there was a "reasonable probability" that had Sheldon tried to offer the statement, the trial court would have admitted it – let alone that its admission would have resulted in a reasonable probability of Sheldon's acquittal.  Moreover, the Court of Appeals' analysis of the admissibility issue is cogent and there is little this Court can add to it.  Sheldon argues that this Court should not make inferences about the nature of the Brady material based on the information currently in the record, see, e.g. Pet. Mem. at 25 n.8, but it is the petitioner who bears the burden of showing his entitlement to habeas relief.  See, e.g., Harris v. Kuhlmann, 346 F.3d 330. 354 (2d Cir. 2003).  The Court notes that petitioner made no attempt to obtain this material through discovery.  See Rule 6(a) of the Rules Governing § 2254 Cases.

In sum, Ennis's ineffective assistance of counsel argument founders on the "prejudice" prong of the Strickland inquiry.  A fortiori, the Court of Appeals' decision on this question did not constitute an unreasonable application of Strickland.

B.    Brady Violation

Petitioner next argues that his conviction must be reversed because the prosecution failed to disclose the Brady material in violation of the Due Process Clause.  See Pet. Mem. at 33-55; Pet. Reply 13-18.  Respondent asserts that this claim is procedurally barred and that it fails on

the merits.  See Resp. Mem. at 51-65.  In light of the fact that the procedural bar argument raises complex issues, we will instead reach the merits of the claim.  See Greiner v. Wells, 417 F.3d 305, 317 n.14 (2d Cir. 2005) ("'[b]y reaching the merits of the ineffective assistance claim, we need not determine whether the claim is procedurally barred'") (quoting Mills v. Scully, 826 F.2d 1192, 1197 n.1 (2d Cir. 1987)), cert. denied, 546 U.S. 1184 (2006); accord Horton v. Ercole, 557 F. Supp. 2d 308, 316 n.5 (N.D.N.Y. 2008); Fabricio v. Artus, 2007 WL 119462, at *6 (S.D.N.Y. Jan. 11, 2007).[2]

In order to establish a Brady violation, "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)); accord Boyette v. Lefevre, 246 F.3d 76, 89 (2d Cir. 2001).  To establish prejudice, the exculpatory evidence must have been "material either to guilt or to punishment."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  "[T]he materiality standard for Brady claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  Banks, 540 U.S. at 698 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

The Supreme Court has made clear that to satisfy the "prejudice" prong of a Brady claim, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682

---

[2]  While the Appellate Division reviewed the Brady claim on the merits, Ennis, 41 A.D.3d at 273, the Court of Appeals decided the Brady question on the basis of the procedural bar, see Ennis, 11 N.Y.3d at 414 n.2.

(1985).  The <u>Bagley</u> standard is thus worded identically to the "prejudice" prong of the

<u>Strickland</u> standard, upon which it is based.  <u>Id.</u>  In light of our discussion of this question in the

previous section, we have no difficulty concluding that the <u>Bagley</u> standard has not been met

here.  That is, there is not a reasonable probability that had the <u>Brady</u> evidence been disclosed to

the defense at an earlier time, the outcome of the case against Ennis would have been different.

Accordingly, Ennis's <u>Brady</u> claim must fail.

IV.    CONCLUSION

For the foregoing reasons, Ennis's petition for a writ of habeas corpus should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. P. Kevin Castel, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be

directed to Judge Castel.  If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474

U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &
Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).


Dated: March 28, 2011
       New York, New York

                                                    _____
                                                    GABRIEL W. GORENSTEIN
                                                    United States Magistrate Judge

                                                18

Copies to:

Richard M. Greenberg
Office of the Appellate Defender
11 Park Place, Suite 1601
New York, NY 10007

Susan Axelrod
New York County District Attorney's Office
One Hogan Place
New York, NY 10013

(1985).  The <u>Bagley</u> standard is thus worded identically to the "prejudice" prong of the

<u>Strickland</u> standard, upon which it is based.  <u>Id.</u>  In light of our discussion of this question in the

previous section, we have no difficultly concluding that the <u>Bagley</u> standard has not been met

here.  That is, there is not a reasonable probability that had the <u>Brady</u> evidence been disclosed to

the defense at an earlier time, the outcome of the case against Ennis would have been different.

Accordingly, Ennis's <u>Brady</u> claim must fail.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, Ennis's petition for a writ of habeas corpus should be denied.

<b>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</b>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. P. Kevin Castel, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be

directed to Judge Castel.  If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474

U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &</u>

<u>Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: March 25, 2011
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

18