UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHELDON ENNIS, also known as THOMAS
JONES,

                Petitioner,

      -against-

ROBERT KIRKPATRICK, Superintendent Wende
Correctional Facility,

                Respondent.
------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-27-11
```

10 Civ. 4023 (PKC)

ORDER ADOPTING REPORT
AND RECOMMENDATION

P. KEVIN CASTEL, U.S.D.J.

        Magistrate Judge Gorenstein issued a Report & Recommendation ("R&R") in this case on March 28, 2011, which recommended denial of Sheldon Ennis's petition for habeas corpus brought pursuant to 28 U.S.C. § 2254. (Docket # 21.) Petitioner's counsel filed objections to the R&R on May 2, 2011. (Docket # 23.) Thereafter, on May 12, petitioner's counsel wrote the Court requesting an additional 30 days "to consider various options and make a further application" in light of certain factual developments that, counsel claimed, had a material bearing on the petition. Specifically, counsel cited to a letter from the petitioner's brother that stated a willingness to offer exculpatory testimony on the petitioner's behalf. More than 30 days have since passed, and counsel has made no application related to the petition or the R&R. I therefore consider the R&R and the petitioner's objections thereto.

        Having reviewed the R&R de novo, I conclude that it is well-reasoned and grounded in fact and in law. It is adopted in its entirety.

        The petitioner was sentenced to 43 and 1/3 years of imprisonment after a jury in the Supreme Court of the State of New York, New York County found him guilty of numerous offenses

related to a crack cocaine trafficking conspiracy. (Pet. ¶¶ 1, 3, 5-6; R&R at 1.) Among other things, he was convicted for his role in the non-fatal shooting of a convicted drug dealer named Billy Moody. (Pet. ¶¶ 12-13.) According to the petitioner, he is unconstitutionally confined because the prosecutor failed to disclose key Brady evidence and because his trial counsel performed ineffectively by failing to raise a timely motion for mistrial and severance based on his knowledge of what was contained in the Brady material. (Pet. ¶¶ 35-39, 41-49.)

The R&R carefully reviewed trial testimony pertaining to the shooting of Billy Moody, a rival drug dealer. (R&R at 2-3.) According to an eyewitness, Frank 'Nitti' Brown, also a drug dealer, the petitioner filed multiple shots at Moody's car, as did the petitioner's brother and co-defendant, Aaron Ennis. (R&R at 3.) Unbeknownst to the petitioner, Aaron Ennis, the petitioner's co-defendant and brother, had stated in a proffer session that he alone shot Moody, and that the petitioner had not been present at the shooting. (R&R at 4.)

Prior to trial, Ennis's then-counsel had requested the production of materials required by Brady v. Maryland, 373 U.S. 83, 87 (1963). (R&R at 3-4.) Aaron Ennis's statements in the proffer session were not produced in response to the Brady request. (R&R at 4.) Near the conclusion of trial, however, Aaron Ennis's defense counsel informed the petitioner's defense counsel of Aaron's attempt to cooperate, and of Aaron's proffer session statement that he alone shot Moody. (R&R at 4.) Petitioner's defense counsel was told this in confidence, under the condition that he not reveal it until trial concluded. (R&R at 4.) The jury convicted the petitioner of, among other things, one count of first-degree assault for the shooting of Moody. (R&R at 5.)

Before sentencing, the petitioner's lawyer moved to set aside the verdict based on the alleged Brady violation. (R&R at 5.) The trial court concluded that the information should have been produced but that the error was not "critical." (R&R at 5.) The trial court also noted that

2

defense counsel was aware of Aaron Ennis's statements, but tactically chose not to raise them until after verdict. (R&R at 5-6.) The motion was therefore denied. (R&R at 5-6.)

Four years later, in January 2005, the petitioner filed a motion to vacate judgment pursuant to New York Criminal Procedure Law §§ 440.10(1) and 440.20. (R&R at 6; Petition Ex. D.) Among other things, he raised the Brady argument and asserted an ineffective assistance claim. (Petition Ex. D.) Like the trial court, the reviewing court concluded that because defense counsel was aware of Aaron Ennis's statements but made a tactical choice not to use them, no constitutional violation occurred. (Petition Ex. D-1 at 2.) Petitioner then appealed his conviction to both the First Department and the Court of Appeals. (R&R at 6-8.) The Court of Appeals denied the ineffective assistance claim, concluding that because "because there is no way that defendant could have presented the statement to the jury," the prosecutor's nondisclosure of Aaron Ennis's proffer session did not rise to a Brady violation. People v. Ennis, 11 N.Y.3d 403, 414 (2008).

The R&R reviewed the ineffective assistance standard set forth by Strickland v. Washington, 466 U.S. 668, 687-96 (1984), and its progeny. (R&R at 12-13.) To establish ineffectiveness under Strickland, a petitioner must show both that counsel's performance was not objectively reasonable and that "any deficiencies in counsel's performance" were "prejudicial to the defense." 466 U.S. at 692. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The R&R noted that in Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010), the Second Circuit explained that when reviewing a state court decision under section 2254, a federal court's focus is on whether the state tribunal's Strickland application "was unreasonable – a substantially higher threshold" than a review of whether the Strickland application

3

was merely "incorrect . . . ." (quotation marks omitted) Rosario described Strickland as employing "a 'general standard,' meaning its application to a specific case requires 'a substantial element of judgment' on the part of the state court." Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "In order to prevail, a petitioner must overcome that substantial deference and establish that the state court's decision on ineffective assistance was contrary to, or an unreasonable application of, Strickland." Id. In a section 2254 petition, "the petitioner bears the burden of establishing that he is entitled to relief." Harris v. Kuhlmann, 346 F.3d 330, 354 (2d Cir. 2003).

The R&R concluded that Strickland's prejudice prong "is sufficient to dispose of this case." (R&R at 13.) Magistrate Judge Gorenstein quoted from the Court of Appeals opinion and its rationale as to why the petitioner was not prejudiced:

> Defendant's claim that his trial should have been severed from Aaron's so that he could call Aaron as a witness is undermined by the fact that Aaron would undoubtedly have asserted his Fifth Amendment privilege against self-incrimination if this had occurred. Nor could defendant have called a witness who overheard Aaron's statement . . . to testify as to its content because, in a trial against defendant, the statement would be hearsay not subject to any exception.

11 N.Y.3d at 412 (quoted in R&R at 13-14). The R&R noted that "the extreme unlikelihood" of Aaron Ennis testifying, as well as the petitioner's "inability" to otherwise place the statement into evidence, meant that there was "no reasonable probability" that the trial outcome would have been different if defense counsel had attempted to use the material. (R&R at 14.) The R&R noted that the petitioner himself has described Aaron Ennis's possible testimony as "a matter of conjecture." (R&R at 14.) The R&R observed that Aaron Ennis "would have doomed any chance he had of prevailing at his own trial" by testifying that he had been the shooter of Ricky Moody. (R&R at 14.) The R&R also quotes extensively from the Court of Appeals discussion as to why any statement by Aaron Ennis would not have been admitted as a declaration against penal interest under New York's

4

evidence laws. 11 N.Y. 3d at 412-13, quoted at R&R 15-16. The Court of Appeals identified three grounds on which Aaron Ennis's statements did not qualify as a declaration against penal interest. Id. The R&R observed that the Court of Appeals was the tribunal best positioned to rule on the application of New York evidence law. (R&R at 16.)

Separately, the R&R concluded that there was no basis to vacate the petitioner's conviction because the prosecution failed to disclose Brady material. (R&R at 16-18.) In order to establish a Brady violation, evidence favorable to the accused must be suppressed by the state, and prejudice must result. (R&R at 17, citing Banks v. Dretke, 540 U.S. 668, 691 (2004)). Prejudice occurs if the evidence could put the underlying case in such a different light that confidence in the verdict is undermined. (R&R at 17, citing Banks, 540 U.S. at 698.) The R&R concluded that authority governing the prejudice prong in a Brady analysis is "worded identically" to the prejudice prong of Strickland. (R&R at 17-18.) For the same reason that it recommended denying of the ineffective assistance claim for failure to establish prejudice, the R&R recommended denial of the Brady claim. (R&R at 17-18.)

In his objections to the R&R, the petitioner contends that Magistrate Judge Gorenstein and the state courts applied "an impossible standard" for establishing prejudice. (Petitioner's Objections at 4.) The petitioner notes that the R&R correctly construed Strickland and Brady as employing "essentially the same" prejudice standards, but that in application, the R&R required "certainty" rather than a "reasonable probability" of different results. (Obj. at 4-5.) Had Aaron Ennis's proffer been disclosed in a timely fashion, petitioner argues, he would have moved for severance and "sought to call Aaron as a witness (assuming that Aaron would have been tried first)." (Obj. at 5-6.) Petitioner argues that it is conjectural and "erroneous" to predict whether Aaron Ennis would have, in fact, testified. (Obj. at 6, 8-9.)

5

Yet the petitioner's own arguments are based on a series of conjectures as to Aaron Ennis's hypothetical testimony. (See, e.g., Obj. at 8 ("Moreover, as Mr. Ennis has argued, it is a matter of conjecture whether Aaron would or would not have testified.")) For instance, the petitioner points to an observation in the R&R that no affidavit was supplied by Aaron Ennis, but acknowledges that "there are certainly reasons why Aaron's appellate attorney would have been reluctant to offer up an affidavit" and speculates that Aaron Ennis might "insist on telling the truth to help his brother." (Obj. at 9 n.3.) The petitioner similarly speculates that he would have successfully moved for severance, which might have resulted in Aaron Ennis's trial proceeding in advance of his own, thereby facilitating Aaron's possible exculpatory testimony at the petitioner's trial. (Obj. 5-6.) He also asserts that the R&R is unduly deferential to the New York Court of Appeals, and contends that Aaron Ennis's out-of-court statement might have been admitted not only as a declaration against penal interest, but also in order to safeguard the petitioner's due process rights and right to present a defense, to impeach the testimony of witness Frank Brown or to refresh Brown's recollection. (Obj. at 11-12.)

In the letter dated May 12, 2011, petitioner's counsel attaches a letter from Aaron Ennis, which was sent from the Clinton Correctional Facility. Aaron Ennis states that he would have testified on behalf of the petitioner and waived his own Fifth Amendment Rights. (May 9 Letter at 2.) He states that on the night of the Billy Moody shooting, the petitioner was home with his girlfriend. (May 9 Letter at 1.) He also sets forth a narrative of the Moody shooting in which Aaron Ennis identifies himself as the sole shooter. (May 9 Letter at 2.)

As the R&R noted, the petitioner ultimately bears the burden of establishing prejudice. (R&R at 16.) Here, that requires the petitioner to establish a "reasonable probability" that 1.) Aaron Ennis would have testified, or 2.) that if he didn't, his out-of-court statements at the proffer

6

session would have been admissible, and 3.) that in both events, Aaron Ennis's statements would have resulted in a reasonable probability of acquittal. Assuming arguendo that Aaron Ennis would, in fact, have testified – perhaps a dubious proposition in spite of his recent letter[1] – the petitioner still has not satisfied his burden of showing "reasonable probability" that it would have led to acquittal. For instance, the objections to the R&R do not address the Brown testimony stating the petitioner fired "[m]ore than one shot" at Billy Moody and his vehicle, except to note that he might have been impeached by Aaron Ennis.[2] (See, e.g., Tr. at 1374-77, 1386-87, 1397.)

At most, then, Aaron Ennis's testimony would have led to a credibility contest between witnesses. This is insufficient to satisfy petitioner's burden that there was a reasonable probability that the trial would have had a different outcome, and is speculative. Similarly, the petitioner's contentions do not support an inference that the New York courts' application of Strickland and Brady was unreasonable. Rosario, 601 F.3d at 123.

For the foregoing reasons, I adopt the R&R in full. As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not issue. Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the instant Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to dismiss the Petition and close this case.

---

[1] Aaron Ennis was, after all, a co-defendant of the petitioner at trial and was aware of the evidence and charges against him. Although, in 2011, Aaron Ennis states that "[a]t anytime if I would have been called to testify on my brother's behalf I would immediately testify to the facts and waive my Fifth Amendment rights of self incrimination," (May 9 letter at 2) he apparently took no steps to exculpate his brother at the 2001 trial, despite an express willingness to do so now. Nevertheless, for the purposes of this petition, I take his 2011 representation at face value.

[2] Brown identified the petitioner by the alias "Dog," which apparently was a nickname used in connection with the "Dog Pound" organization that included the petitioner as a member. (See, e.g., Opp. to Petition at 2.)

SO ORDERED.

/s/ P. Kevin Castel
_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 27, 2011